1. WILLS—CONSTRUCTION—LEGACY TO DEBTOR—SET-OFF AGAINST LEGACY.

Several years prior to the date of his will, testator loaned $2,000 to his
niece, for which he took interest-bearing promissory notes, which were re-
newed from time to time, and at least one payment was made thereon.
The will bequeathed to the niece $3,000, and in a subsequent clause pro-
vided, "Whatever in the way of money or property of any kind my said
legatees or either of them may receive or may have received from me in
my lifetime is hereby declared to be an absolute gift and in no sense an
advancement and shall in no way be considered as reducing or affecting
any of the legacies herein given."  Held, that the niece's note should be
offset against the legacy.

In the matter of the judicial settlement of the accounts of Louis H.
Cramer and another as executors and trustees of the estate of Chauncey
Kilmer, deceased.

Chauncey Kilmer died on the 11th day of November, 1901, leaving a will
dated June 14, 1900, which was thereafter duly admitted to probate by the sur-
rogate of Saratoga county, and which provided, among other things, as fol-
lows:

"Ninth. I give and bequeath to my niece, Carrie Shippey, daughter of
Charles and Julia Kilmer; also to Jane Clute, wife of Jerome Clute and
daughter of Harry and Lucy Ann Kilmer; also to Cordelia Kilmer, daughter
of Harvey and Adaline Kilmer, each the sum of three thousand dollars, to
be paid to each within eighteen months after my decease."

"Fourteenth. Whatever in the way of money or property of any kind my
said legatees or either of them may receive or may have received from me in
my lifetime, is hereby declared to be an absolute gift and in no sense an ad-
vancement and shall in no way be considered as reducing or affecting any of
the legacies herein given."

The testator left him surviving, a daughter, Ann Augusta Lake, and two
grandchildren, Clarence B. Kilmer and Mary K. Butler, the children of his

deceased son, Clarence B. Kilmer, to whom at different times during his lifetime he had given considerable amounts of money and property, without taking any acknowledgment or security therefor. Some years prior to the date of his will the testator loaned to his niece Carrie A. Shippey, the person named in his will, at various times, sums of money amounting to $2,000, for which he took her two promissory notes of $1,000 each. These notes were subsequently taken up by a note dated January 11, 1900, payable six months after date, with interest, for $2,040, which was the balance due upon them at that date. When the note dated January 11, 1900, became due, Mrs. Shippey paid the testator $104, which reduced the indebtedness to $2,000, and gave him a new note, dated July 11, 1900, for the latter amount. This last-mentioned note was renewed from time to time until July 11, 1901, when Mrs. Shippey gave Mr. Kilmer a note of which the following is a copy:

"$2,000.00                                               July 11, 1901.

"Six months after date I promise to pay to the order of Chauncey Kilmer, two thousand dollars. For value received. With interest.
                                                 "Carrie A. Shippey."

This note the testator held at the time of his death, and it passed thereafter into the possession of his executors. It is now claimed by Mrs. Shippey that, from the provisions of the will above quoted, it appears to have been the intention of the testator to relinquish his claim against her upon the note, and also to provide for the payment to her of a legacy of $3,000; that the moneys loaned to her, and represented by the note which the testator held at the time of his death, were declared by his will to have been a gift to her; and that the executors cannot maintain any claim against her upon the note. The executors, on the other hand, claim that no such intention can be found in the language employed by the testator, and that the provisions in the fourteenth clause of the will were not intended by him to apply to the moneys which had been loaned by him to Mrs. Shippey; that the note held by him was a valid claim against the maker, and constituted a part of the assets of the testator's estate; and that it was the duty of the executors to collect the same, and they had a right to offset the amount due upon it against the legacy which they were directed by the terms of the will to pay to Mrs. Shippey.

Clarence B. Kilmer, for executors.
Potter & Kellogg, for Carrie A. Shippey.

LESTER, S. The fourteenth clause of the testator's will was evidently designed to characterize as a gift that which otherwise might be mistaken for an advancement. In employing the word "advancement," it is evident that the testator did not employ it in its limited statutory meaning, because in that meaning it is applicable only to cases of intestacy, and to moneys advanced by a parent to a child in anticipation of such child's future share of the parent's estate. Code Civ. Proc. § 2733; Real Property Law (Laws 1896, c. 547) §§ 295, 296.

The word "advancement" is employed by courts of equity, in a wider sense, to denote money or property advanced as a satisfaction pro tanto of a general legacy given by a parent or other person standing in loco parentis to a child or grandchild. Matter of Weiss, 39 Misc. Rep. 71, 78 N. Y. Supp. 877; Lawrence v. Lindsay, 68 N. Y. 108–112.

There is no rule or principle of law, however, by which moneys advanced to collateral relatives could in any event be held to partake of the nature of advancements, or to be followed by the legal consequences which belong to them. It does not seem probable, therefore, that the testator had in his mind the money loaned to Mrs. Shippey, when he declared money or property his legatees might have received

from him an absolute gift, and that it should not be considered in any sense an advancement. The moneys loaned to Mrs. Shippey were loaned under such circumstances that they could not have been mistaken either for a gift or for an advancement. They were intended as a loan, and always treated as such by the testator. He required Mrs. Shippey to give him her obligations therefor, which at once distinguished them from an advancement as well as from a gift. They could not, in their very nature, come within any reasonable definition of the word "advancement," and the conduct of the testator in renewing the obligations given to him therefor from time to time, after he made his will, and in collecting interest, showed that he did not intend them to be a gift. Rogers v. Rogers, 153 N. Y. 343, 47 N. E. 452. If the testator had desired that this note of Mrs. Shippey should be given up to her and canceled, and that she be released from her liability upon it to his estate, he would, I think, have declared this intention in plain language. Without such a clear statement, an intention to cancel the note is not to be presumed. Van Alstyne v. Van Alstyne, 28 N. Y. 375; Stagg v. Beekman, 2 Edw. Ch. 89.

On the 7th of November, 1902, the executors remitted to Mrs. Shippey a check for $697.50, which they stated was the balance of her legacy under Mr. Kilmer's will, after deducting the transfer tax and the amount of her note. She at first, through her counsel, objected to receiving the check as the balance of her legacy, but she afterward sent the executors a receipt therefor, stating it to be "Balance of legacy less State Legacy Tax $142.50 and note and interest $2,160," and at the same time requested them to return her the note, which they did accordingly. The executors claim that the acceptance of the check, the signing of the receipt, and the delivery to Mrs. Shippey of her note constituted an accord and satisfaction, and for that reason she cannot maintain her claim. It is not necessary to pass upon the correctness of this position, having disposed of the question involved upon other grounds.

For the reason stated, it is my opinion that Mrs. Shippey's claim cannot be maintained. The executors were justified in offsetting the amount of her note against the legacy, and the transaction resulted in the payment in full of the legacy given to Mrs. Shippey by the testator under his will. A decree should be entered accordingly.

Decreed accordingly.